18308. WALLING *v.* HARRIS, Sheriff.

WORRILL, Justice. 1. "Where a habeas corpus proceeding is instituted for the release of a prisoner upon the grounds that he was deprived of his constitutional rights of the benefit of counsel and of trial by jury, and there is an issue of fact on the allegations made by the movant, the trial judge becomes the trior; and where there is ample evidence to support his judgment, it will not be set aside." *Mathis* v. *Scott,* 199 *Ga.* 743 (2) (35 S. E. 2d 285); *Bradford* v. *Mills,* 208 *Ga.* 198 (3) (66 S. E. 2d 58).
2. "The writ of habeas corpus cannot be used as a substitute for appeal, writ of certiorari, writ of error, or other remedial procedure for the correction of errors of law, of which the defendant has had opportunity to ·avail himself; nor can it be used as a second appeal or writ of error for such purpose." *Hodges* v. *Balkcom,* 209 *Ga.* 856 (3) (76 S. E. 2d 798).
3. Applying the above principles to the evidence in the present case, the trial judge did not err in remanding the petitioner to the custody of the respondent.

*Judgment affirmed. All the Justices concur.*

SUBMITTED SEPTEMBER 14, 1953—DECIDED OCTOBER 13, 1953.

*James N. Rahal,* for plaintiff in error.

*Andrew J. Ryan, Solicitor-General, Sylvan A. Garfunkel, Thomas M. Johnson, Jr., Assistant Solicitors-General,* contra.

Henry C. Walling brought habeas corpus proceedings against the Sheriff of Chatham County. Upon the hearing he was remanded to the custody of the sheriff.

The record discloses that Walling and a codefendant were sentenced for three felonies to wit, burglary, assault with intent to rob, and larceny of an automobile. The sentences were for a total of 29 years and were to be served consecutively.

It is alleged that Walling was denied his right to due process and the equal protection of the laws, because the court denied him the following constitutional rights: (a) to be represented by legal counsel of his own choice; (b) a fair and impartial trial by a jury; (c) to examine the evidence and witnesses against him; and (d) to be present at any and all stages of the proceedings against him.

On the habeas corpus hearing the solicitor-general testified in part: A detective was put upon the stand with a statement from Walling in which he admitted committing all of these crimes. Walling was out of jail on bond during all this time. He had promised to aid the Federal Government in tracking down some evidence, and they had prevailed upon Mr. Sassen to take him out on bond. When Walling was asked if he had a lawyer he said, "No," that he did not need a lawyer, that Mr. Lee was going to have something to say to the court in his behalf. Mr. Fine represented the codefendant, and the witness asked him if he would also represent Walling and see that he was given every remedy afforded him. The attorney did that.

Henry C. Walling testified: The solicitor-general asked him to appear in court on April 6, 1953, said the codefendant was in jail and wanted to be tried. The solicitor-general asked if he had an attorney and he said, "No." The solicitor-general said he would be tried on April 6th, and he appeared. He did not have an attorney and had not employed one. If Mr. Fine represented him, he knew nothing of it. He did not plead guilty, did not sign his name on the back of the indictments, thought

that he and the codefendant were to be tried separately, for he wanted, and did not waive, a jury trial. The solicitor-general told him to get a lawyer. He "mistook" his telling him that he was going to be tried with the codefendant. He did not ask the solicitor-general or the sheriff to get him a lawyer. He saw Mr. Fine standing there with the codefendant, heard Mr. Baughum testify what the witness had done, heard the codefendant make a statement to the court. Mr. Fine asked witness if he had anything to say, and he shook his head. He did not have an opportunity to examine any witness in his behalf, and he was not confronted by any witnesses outside of the police officers. There was no evidence in this case except witness's alleged confession.

Julius S. Fine, a member of the Savannah Bar, testified: He represented the codefendant on April 6, 1953. The solicitor-general asked him to represent Walling and assist him in the trial of his case, as he was representing the codefendant. Walling did not employ him. He did not receive any money from him, did not talk to him about the case, for Walling did not want to talk about it, and refused to make a statement to the court. There was nothing he could ask the witnesses, for Walling did not want anything done. Did not say anything in Walling's behalf with the exception of trying to get him to make a statement to the court. Knew that both the codefendant and Walling made statements admitting their participation in these offenses. Knew about the evidence the State had against them and their statements to the police. That is why he asked that these cases be withdrawn from the jury and come before the court for sentence. He was familiar with the circumstances surrounding these cases. Did not ask Walling whether he waived a jury trial. No evidence was introduced against Walling with the exception of his alleged confession. Several witnesses were present, but they were not examined because Walling did not want any questions asked. There was very little witness could do to help him. Witness's signature appears on these indictments, and he represented the codefendant and Walling. Mr. Baughum was on the stand first. He outlined the case and the confession. The codefendant made a statement and pleaded for mercy. Witness then asked Walling if he had anything to say to the court, and he said he had nothing to say. He did not

put up the other witnesses. He would have done so if Walling had asked him to.

The solicitor-general stated: There is no contention by the State that Walling actually put his signature to anything; the names you see on the back of these indictments are the names of these defendants; it says in open court they pleaded not guilty and put themselves upon the court; the pleas were signed by Mr. Fine; it is not contended that the defendants personally signed their names.